# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No. 19-50110 |
| **Richard M. Judy Family Trust,** ) | |
| ) | Chapter 11 |
| Debtor. ) | |

## MEMORANDUM OPINION

This case requires the court to determine the priority of competing claims to insurance proceeds from the loss of chapter 11 debtor Richard M. Judy Family Trust's equipment in a fire. Creditor First Missouri Bank requests the court award it the insurance proceeds under contract law, arguing its status as loss-payee under the insurance policy gives it a superior right to the proceeds. Creditor FCS Financial PCA opposes this request, contending its purchase-money security interest in the proceeds gives it the first-priority security interest under Article 9 of the Uniform Commercial Code.

Because UCC Article 9 governs this matter, and FCS's perfected purchase-money security interest extends to the collateral's identifiable proceeds, including the insurance proceeds, the court determines FCS has a first-priority security interest and is entitled to the insurance proceeds up to the amount of its secured claim.

## JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This matter is statutorily core under 28 U.S.C. § 157(b)(2)(K) and is constitutionally core. The court has the authority to hear the matter and make a

final determination. No party has contested jurisdiction or the court's authority to make final determinations.

## BACKGROUND

The court derives the following background facts from the record. The bank filed a proof of claim for $1,298,679.95 (Claim 5-1), representing several unpaid loans which the bank alleges are secured by, among other things, a blanket security interest in the debtor's equipment. FCS filed two proofs of claim: a proof of claim for $31,988.97 (Claim 6-1) which FCS asserts is secured by a perfected purchase-money security interest (PMSI) in a Kinze 3600 Planter, and a proof of claim for $24,574.66 (Claim 7-1) which FCS asserts is secured by a perfected PMSI in a Case IH 330 34' Turbo Tillage. No one has objected to Claim 5-1, Claim 6-1, or Claim 7-1.

FCS filed a motion for relief from the automatic stay with respect to the planter and turbo tillage. The bank initially objected on two grounds. The bank first argued that FCS did not have "corresponding Security Agreements" for its loans to the debtor, implying that FCS had no security interest in the planter or turbo tillage. The bank also argued that its blanket security interest in equipment had priority over any security interest held by FCS because the bank filed its financing statement with the Missouri Secretary of State before FCS filed its financing statement. FCS contended in its response that its PMSIs in the planter and turbo tillage had priority over the bank's blanket security interest because FCS perfected each of its PMSIs within twenty days after the debtor's acquisition of the subject collateral.

2

After reviewing supplemental materials that FCS supplied in its response, the bank's counsel appeared at the October 8, 2019, hearing and conceded that FCS had a PMSI in the planter and the turbo tillage. The parties advised the court, however, that the debtor owned two Kinze planters, that one of those planters was destroyed in a 2017 fire, and that the parties needed more time to determine which Kinze planter was destroyed. The bank's counsel also raised orally at that hearing that he questioned whether FCS would have a perfected security interest in any insurance proceeds if the planter subject to the FCS PMSI had been destroyed because the bank's financing statement mentions proceeds while FCS's financing statement does not. With the consent of the parties, the court granted FCS relief from the automatic stay as to the turbo tillage and continued the hearing as to the planter.

It turns out that the Kinze planter subject to the FCS PMSI was destroyed in the 2017 fire. Fortunately, the planter and many other assets lost in the fire were covered by insurance. Because the bank was listed as a loss payee in the insurance policy, the insurance company issued a check jointly payable to the debtor and the bank for $171,959.96. ECF No. 126. Of that amount, $85,000 was for the market value of the planter. ECF No. 126. The debtor turned the insurance check over to the trustee, who proposed to endorse the check, deliver it to the bank, and have the bank endorse and deposit the check and apply it to the bank's debt. Based on the agreement of FCS and the bank at the November 5, 2019, hearing, the court authorized the trustee to endorse the check and send it to the bank and authorized the bank to endorse the check and apply $131,959.96 to its secured claim. To protect

3

the interests of the bank and FCS in the insurance proceeds, the court also directed the bank to return $40,000 to the trustee—a sum the trustee, FCS, and the bank agreed should cover FCS's claim—and directed the trustee to hold that $40,000 pending the resolution of the priority dispute between the bank and FCS. ECF No. 145.

The bank takes the position it has the superior interest in the insurance proceeds. The bank argued in its brief or during oral argument that (1) FCS's loan documents "do not include Security Agreements" (despite having already conceded that FCS had a PMSI in the planter during the October 8 hearing); (2) FCS does not have any interest in the insurance proceeds because FCS's financing statement does not expressly mention proceeds; and (3) contract law, rather than Article 9, governs this dispute and, because the bank required the debtor to obtain insurance on the planter and contracted for the status as loss-payee, the bank has the superior right to the proceeds. FCS, on the other hand, argues it has a first-priority lien on the proceeds because its PMSI automatically extends to the insurance proceeds from the planter. The parties' competing interests in the proceeds from the planter set up the current lien priority dispute.

## ANALYSIS

The threshold issue is whether Article 9 of the Uniform Commercial Code (UCC) or contract law applies. Article 9 governs transactions where parties take security interests in personal property collateral and proceeds of that collateral. Mo. Rev. Stat. §§ 400.9-109 and 400.9-315.

4

Whether insurance payments for loss of, or damage to, collateral—"derivative insurance proceeds"—are within the scope of Article 9 has evolved and is now clear. Under the original version of Article 9, which was in effect in Missouri from 1963 through 1988, it was unclear whether or under what circumstances derivative insurance proceeds were proceeds under Article 9. Later, however, under the 1972 version of Article 9, which was in effect in Missouri from January 1, 1989, until June 30, 2001, § 400.9-306(1) provided that derivative insurance proceeds were proceeds subject to a creditor's Article 9 security interest unless payable to a loss payee other than the secured creditor. *See Pers. Fin. Co. v. Kink (In re Kink),* 15 B.R. 701, 706–07 (Bankr. W.D. Mo. 1981) (discussing cases interpreting the original and 1972 versions of Article 9). But under Revised Article 9, which became effective in Missouri on July 1, 2001, it is now clear that derivative insurance proceeds constitute proceeds under UCC § 9-102(64). Mo. Rev. Stat. § 400.9-102(64)(E); Barkley J. Clark & Barbara Clark, *The Law of Secured Transactions* § 1.08[8][b] at 1-221 (3d. ed. 2014).

The cases cited by the bank in its brief are either inapposite or interpret an earlier version of Article 9. *See In re Crownover,* 43 B.R. 22 (Bankr. E.D. Mo. 1984) (determining real estate mortgagee's interest as loss payee in derivative insurance proceeds in a case that did not involve personal property security interest, Article 9, or competing security interest); *Williams v. Rutherford (In re Rutherford),* 73 B.R. 665 (Bankr. W.D. Mo. 1986) (determining rights of first and second real estate mortgagees and bankruptcy trustee in a case that did not involve personal property security interests or Article 9); *Fireman's Fund Am. Ins. Co. v. Ken-Lori Knits, Inc.,*

5

399 F. Supp. 286 (E.D.N.Y. 1975) (interpreting the pre-1972 version of § 9-306(1) under distinguishable facts).

In this case, because the insurance proceeds are for the loss of, or damage to, the planter, the proceeds are within the scope of Article 9. Mo. Rev. Stat. § 400.9-102(64)(E). Thus, Article 9, not contract law, governs.

Having established derivative insurance proceeds fall under the scope of Article 9, the court turns to determining whether FCS had a security interest in the Kinze planter and, if so, which party has a first-priority lien in the insurance proceeds from the planter.

Despite conceding that FCS had a PMSI in the planter at the October 8 hearing, the bank argues in its brief that "[t]he loan documents for the FCS Equipment do not include Security Agreements." ECF No. 162 at 2. The FCS Promissory Note/Loan agreement relating to the planter, however, includes the following language: "The Borrower grants to the Lender as security for the payment and performance of this loan . . . a security interest in all the Borrower's rights, title, and interest in the Collateral." The agreement further identifies the planter as the collateral. This granting language in the Promissory Note/Loan agreement is a clear and objective manifestation of the debtor's agreement to grant a security interest in the planter. *See Vantage Invs., Inc. v. Loc Nguyen Corp. (In re Vantage Invs. Inc.)*, 385 B.R. 670, 682 n.14 (Bankr. W.D. Mo. 2008) (determining security agreements do not have a set form; documents containing an "objective manifestation" to grant a security interest in collateral may constitute a security agreement). The bank

6

conceded at the October 8, 2019, hearing, and the court finds based on the record, that FCS had a perfected PMSI in the planter.

Here, the bank and FCS both had a perfected security interest in the planter. Because the insurance payment constitutes identifiable proceeds, both creditors have a perfected security interest in the proceeds. Mo. Rev. Stat. §§ 400.9-203(f), 9-315(a)(2), (c), (d)(2). So who has priority?

A perfected PMSI in goods "has priority over a conflicting security interest in the same goods, and . . . identifiable proceeds . . . if the [PMSI] is perfected when the debtor receives possession of the collateral or within 20 days thereafter." Mo. Rev. Stat. § 400.9-324(a). Thus, the priority of a perfected PMSI in equipment extends to the insurance proceeds. *Id.*; Clark, *supra*, § 1.08[8][b] at 1-221. So FCS holds a perfected PMSI in the insurance proceeds from the planter. The bank's perfected blanket "equipment" security interest also extends to the insurance proceeds. Under § 400.9-324(a), FCS's PMSI in the insurance proceeds has priority over the bank's blanket lien covering the same proceeds.

The bank argues its status as loss-payee gives it a first-priority claim to the proceeds over that of FCS, despite FCS's PMSI in the proceeds. But the bank's status as loss-payee gives it no greater interest in the proceeds than it would have in the planter itself. *First Nat'l Bank & Trust v. Novak (In re Novak)*, Case No. 17-1978, Adv. No. 17-5152, 2018 WL 4177831 at *4 (Bankr. D. Kan. Aug. 27, 2018). Rather, a party's interest in derivative insurance proceeds is merely a continuation of the preexisting security interest in the original collateral. Therefore, FCS's PMSI in the

7

Main Document    Page 8 of 8

insurance proceeds from the planter has priority over the bank's blanket lien, despite the bank's status as loss-payee.

## CONCLUSION

For the reasons explained above, the court concludes that FCS holds the prior perfected interest in the insurance proceeds from the Kinze 3600 planter. The court, therefore, awards FCS the insurance proceeds from the planter up to the amount of its secured claim. The court will issue a separate order directing the trustee to pay FCS enough insurance proceeds to pay Claim 6-1 and setting a deadline for FCS to file an application under 11 U.S.C. § 506(b) requesting post-petition interest, fees, costs, or charges.

Dated: 3/24/2020                    /s/ Brian T. Fenimore
                                    United States Bankruptcy Judge